Judge Mills
delivered the Opinion of the Court.
On the first day of November, 1813, Hugh Stevenson, Daniel Rider, Hugh Morrow and Maxwell Sharp entered into a partnership, for the purpose of carding and spining Cotton and Wool, and agreed to prepare a factory and erect machinery for that purpose; and as evidence pf their association, they entered into articles pf agreement, which was not explicit in its terms, and is obscure in meaning. Rider and Morrow were to do the mechanical part, Stevenson and Sharp were the capitalists, and to furnish the money necessary, and thus the stock of the parties were to be equalised and their profits and loss to be equal.
In a house chosen for that purpose, machinery was made, and moving power applied, and the. partnership continued till the year 1817, when the parties seem to have abandoned it; for what cause does not certainly appear, but probably owing to a belief that the business was unprofitable, or an unwillingness or inability to purchase materials whereon to operate.
Morrow and Stevenson concurred in selling out the-Cotton machinery, on credit, and notes were executed to Stevenson for the amount, in instalments, but one of which, to the amount of about $808, was collected by Stevenson, and the rest cannot be collected because of the insolvency of the purchasers. The carding machinery is yet unsold.
Rider demits.
Morrow’s bill for an account against Stevenson and Sharp.
Stevenson and Sharp’s answers.
Settlement between Morrow and Stevenson.
Decree against Sharp for Morrow and for Ste* venson.
Obscurity and unskili-fulnessof the pleading.
During the partnership and not long after its commencement, Rider, under a clause in their writing, withdrew from the partnership, and left no accounts behind to settle, and Stevenson appears to have been an acting partner with Morrow during its continuance.
After its abandonment, Morrow, filed this bill against both Stevenson and. Sharp, to coerce a settlement of the partnership accounts, charging that there was a balance in his favor against both the others, and alleging that Stevenson had 'brought about a previous settlement of their accounts, and had gotten notes from him for a balance appearing, according to Stevenson’s mode of adjustment, which was erroneous and false, and as to him, he endeavors again to open the settlement, and have relief against these notes, and a decree against Stevenson and Sharp.
Both Stevenson and Sharp answered separately, contesting the justice of the accounts set up by Mor-fow.
Before the final decree, Morrow and Stevenson settled their controversy by an agreement, filed in the cause and by consent made the decree of the court, by which the former settlement between them was to stand unaltered and affirmed; Morrow was to pay to Stevenson one half of his costs, and Stevenson to pay to Morrow one third of the $305 which he had received for the sale of the machinery, and to account for one third of the balance, if ever he received it.
The cause still progressed between Morrow and Sharp, and a commissioner reported a statement of the accounts, and on a final hearing, the court decreed that Sharp should pay to Morrow about $458, a balance reported against him by the commissioner, .and should also pay to Stevenson about $50, to equalie all their accounts. To reversse this decree Sharp has prosecuted this writ of error.
But few records have afforded more trouble and less light on the matter of controversy. For, besides the vague and confused manner in which the *302 articles of co-partnership are drawn, there is a studied. obscurity, and a use of indefinite expression throughout all the pleadings, which leaves but few facts either admitted or denied, after they are read, and the testimony is nearly as dark as the pleadings.
Censure on tiie transcript of the record.
Before refcr-ing accounts to auditors, the chancellor ought to decide the main questions in the cause, and state the principles on which the accounts are to be made up, and on what questions evidence may be heard.
To increase the burden of our labors, the clerk not only suffered matter to be crowded into the record which ought net' to be there, and placed in. disorder that which ought to have been contained therein; but although he appears capable of stating the correct history of a cause, and to write a legible hand, now and then interspersed in the copy, yet he has employed ap assistant, to write long pleadings and depositions in a hand ftoi only merely illegible, but so as to mistake one word for another, and write some composed of letters not expressing any word known td our language; an evil not to be charged on this record alone, but prevalent in too many of our clerk’s offices, not only troublesome to this court, but dangerous and expensive to litigants, and which needs some appropriate remedy, as is manifest by a majority of records brought before us for revision.
To add to the difficulties in the way of s, cleat: understanding of the cause, the court below has not performed the duties imposed on the chancellor in matters of account. The accounts are refer-ed to a commissioner without any directions, or a single principle decided; of course the commissioner had to do the duties of the chancellor, and not only state the account, and adjudicate on 'each item, but also to settle the principles on which each class of accounts were to be admitted or rejected, according to the articles of co-partnership, and the construction which he might fix upon it. After this account .was returned, the court refused to sustain exceptions thereto, and simply gave a decree for the balance reported.
We have had occasion heretofore, in several cases, to recite the rules which ought to govern the chancellor in deciding upon matters of account, and on his necessary duties before the accounts arc referred, and regret that they are not more strictly attended *303 to than they are. In this case the court ought first to have settled the construction of the articles of co-partnership, and decided what kind of accounts came within, and what was without the partnership, and laid down the principles by which the commissioner ought to be governed, and to have left to the commissioner the matters of detail, in stating the accounts, and ascertaining what were or were not sustained by the proof. Instead of this, only the written accounts of the parties were laid before him.
Advances and receipts of the parties and error in the accounts, as to Sharp, detected.
Decree between Morrow and Stevenson, ended the causo as to Stevenson, and he not after-wards in court.
*303 Among the clouds of obscurity which hung over the transaction, we are able to perceive pretty clearly, that Sharp, the plaintiff in error, lived at a distance from the factory, and never attended it, or received one cent from it, after he had advanced upwards of five hundred dollars in money, to put it into operation. That the factory actually went into operation during the years, 1814, 1815, 1816 and 1817, and did considerable labor for others, and that whatever was received by the custom given to the factory, was entirely used by either Morrow, or Stevenson or perhaps both; and yet the books of the factory were not given in charge to the commissioner, nor was he directed by any other means of enquiry, to ascertain what was made during its operation, or what was lost by neglecting it, and still Morrow is allowed a salary for managing it, as well as Stevenson, when it is evident that every cent received by them, must go to sink the amount of their respective accounts against the partnership. All we have on this subject, is a credit of about $230, voluntarily presented by Morrow, to the commissionr er, when the factory must, and probably by the evidence, did make far more. This is an error which must have operated to the prejudice of Sharp, in the settlement made.
But there is another palpable error to the preju? dice of Sharp. Both he and Stevenson filed their separate answers, resisting Morrow, and they say nothing of any charges against each other, and they are both wholly silent about any claim or expectation of a decree against each other. It is true, that Stevenson, in one answer, professes not only to an- *304 swér the bill of Morrow, but also the answer of Sharp in the nature of a cross bill against himself. But this was evidently a mistake on his part; for Sharp had filed no answer against him in the nature of a cross bill, or asked him to answer any thing. But although he professed to answer this supposed cross bill of Sharp, which only existed in his own imagination, yet he says nothing about any claim against Sharp. In the month of February, 1824, the court entered up the agreement between Morrow and Stevenson, and decreed accordingly, which terminated the cause as to them. At the same time a decree was entered against Sharp, which the court afterwards set aside, on the petition of the complainant; but from that moment all controversy-with Steyenson ceased; the cause as to him was at an end.
Decree for Stevenspn, who had been years before, out of court against Sharp, erroneous.
Stevenson’s deposition taken after he was dismissed from the pause.
Ope defend-ani may be :>- TiioaTe/0* where be tloeE not h^^wn inf terest.
*304 And it was not till the month of June, 1825, and after the cause had been removed by change of venue to another circuit, that a decree was finally entered against Sharp, not only in favor of Morrow but also in favor of Stevenson. This decree cannot be supported for several reasons, but especially because Stevenson was not, at that time, a party to the cause, and had been dismissed therefrom upwards of a year before. And although the court below supposed him out of court previously, as to Morrow, yet it also, in some way, supposed that he was still lingering there as to Sharp, a co-defendant, against whom he had no charge, and Sharp none against him.
By thus settling that Steyenson was out of the cause, at that time, another question arises on the admissibility of evidence. After Stevenson- and Morrow had made the agreement settling their controversy, and the court had decreed thereon, Sharp applied for, and obtained leave to take his deposition, to be read as evidence in his favor. On the final hearing this deposition was objected to, and rejected by the court below as incompetent, and this question is now presented to us for revision.
It is clear that in a chancery suit, one defendant can be made a witness for another; but this is only *305 •In cases where he does not thereby aid his own interest.
no^a^oo'd * witnesffor another, his third,Vor°an account.—
But—
After a de-e<f against"** one of the partners, third, in a Ml for an heisno er a party in the cause, he iseaea“™j?®” m'
And in a suit to settle, a partnership account between partners, where all are parties, and liable to háve their accounts, inter se, allowed or disallowed, it would be difficult to maintain that one could be a witness for another. Because if he diminished the account of any one, by his evidence, he, in the same proportion would raise his own to or above the standard of equality. Thus in the case of Stevenson, when a party could, by his testimony, lessen the account of .Morrow, his own would be increas-fed in value, and as the account of any one would sink by his evidence, his own would proportionably rise, and of course his danger become less, and his interest thus would be vitally involved.
But after Stevenson was dismissed from this controversy, and was no longer a party, the remaining question was, whether Sharp was indebted to the firm, and particularly to the partner Morrow. It is true that still the amount of Stevenson’s account would be collaterally involved. For it is evident that if Sharp’s account was less than that of Morrow, it would not follow that he could recover against Sharp, for Stevenson might be so far behind both, that the sum due to Morrow, taken from Stevenson, would equalise them. In like manner, if Morrow’s account was lessened by his evidence, his own was worth still more. If, therefore, the determination upon the matter in question between Sharp and Morrow, could be given in evidence hereafter, either for or against Stevenson, or bind his rights in a controversy between himself and Morrow, or himself and Sharp, then he would be incompetent. But this we apprehend is not the case. What was done in the cause, while he was a party might bind him; but what was afterwards done between others after he was out of it, would not, and in a future controversy between him and Sharp, he vtfOnlts. have to prove his own account, or impeach the Of the other partners de novo, as if nothing had been done. It therefore follows that he was a c&napp- *306 tent witness, and his testimony ought to have been heard.
Found on the evidence, the balance of the account was in favor of Sharp, and decree for him refused only because he bad not pray-©d.for it.
Mayes and Monroe, for plaintiffs,; Crittenden, for defendant.
After the evidence is admitted, we cannot hesitate to give credence to it. He had the best opportunity of knowing the true state and justice of the accounts of both Morrow and Sharp, and his deposition wears the appearance of candor and intelligence, and he is unimpeached. It is clear from his deposition, which is almost the only one which sheds any light upon the subject, that Sharp’s account taken from the books of the firm, ought to have been greater than what was allowed, and that Morrow’s ought to have been so much less, that nothing would be due to Morrow, and probably Sharp might be entitled to a small amount in his favor, and we have hesitated whether to keep the cause open for a new account to be taken, that Sharp might recover. But as it seems to be conceded on all hands, that the partnership was a losing one, and. that all must lose something, and Sharp, by his pleadings, has only resisted a recovery against him, and not wished a decree in his favor, and only desires a dismission of the bill, as Morrow is not entitled to recover, and Sharp does not seek to do so, a termination of tire controversy we deem most proper.
The decree must, therefore, be reversed with costs, and the cause Ire remanded, with directions to dismiss the bill with costs, against tire complainant in that court.